GEORGE B. NEIDIG, PLAINTIFF-RESPONDENT, v. JOSEPH
FISHER, DEFENDANT-APPELLANT.

Submitted May 26, 1939—Decided September 22, 1939.

For the plaintiff-respondent, *Horace G. Brown* and *James
B. Avis.*

For the defendant-appellant, *Samuel P. Orlando.*

The opinion of the court was delivered by

WELLS, J.   This is an appeal from a judgment for $3,250
entered in the Supreme Court, Gloucester Circuit, based upon
a verdict of the jury in favor of the plaintiff-respondent,
George B. Neidig, and against the defendant-appellant,
Joseph Fisher.

On September 11th, 1938, Neidig was driving in his automobile from Cecil, New Jersey, to Williamstown, his place of residence, in a northerly direction on a highway known as the Black Horse Pike. At the juncture of the Black Horse Pike and Main street, Williamstown, his car was involved in a collision with one owned and operated by the defendant Fisher, a resident of Pennsylvania.

At the place of the collision, the Black Horse Pike is a dual highway, having two lanes each going north and south, separated by grass plots. Going in a southerly direction, and just before the juncture with Main street, the pike has a gradual curve to the left. At this juncture a "Y" is formed, of which Main street is one arm, and the south-bound lane of the pike forms the other arm and both continue on to make the base.

Opposite the point where Main street and the south-bound lanes of the pike meet there is an oblique opening in the grass plots, which is thirty-six feet wide on the side of the north-bound lanes, and fifty-seven feet wide on the side of the south-bound lanes. At this opening, visible to north-bound traffic, there is a sign pointing up Main street and marked "Williamstown Business District." Through this opening and up Main street is the normal way for north-bound traffic to go to Williamstown.

For the personal injuries and property damages sustained in the collision, Neidig brought this action against Fisher.

Upon the trial of the cause after denial of motions for nonsuit and directed verdict, the jury returned a verdict in favor of the plaintiff, and from the judgment entered thereon this appeal is taken.

The defendant-appellant Fisher generally urges three grounds for the reversal of the judgment entered below; (1) that the trial court erred in allowing an amendment to the complaint increasing the amount of damages demanded from $2,750 to $5,000; (2) that the court erred in denying motions for nonsuit and directed verdict; and (3) that the court erred in making certain charges to the jury to which exceptions were taken.

As to the first ground, the record shows that notice of

motion to amend was properly given by the plaintiff and acknowledged by the defendant. The day set for hearing the motion was the day before that on which the trial was to begin, and upon the non-appearance of the defendant or his counsel the motion was granted. On the day of the trial, subsequent to the swearing of the jury, defendant first objected to the motion and was overruled.

The defendant contends that the making of the motion at this late date, and the granting thereof, was prejudicial in making provisions for the possibility of a larger verdict while depriving him of his right to transfer the cause to the federal courts, which may be done where the amount involved exceeds $3,000 and there is a diversity of citizenship between the parties to the suit.

Motions for the amendment of pleadings are addressed to the sound discretion of the trial court, and rulings thereon are not disturbed on appeal in the absence of clear proof that this discretion was improperly exercised. *Watson* v. *Detroit and Fidelity Surety Co.,* 109 *N. J. L.* 71. There is nothing before us to show that the defendant was prevented from opposing the motion on the day set for hearing; nor does it appear that after motion had been granted, the defendant could not have taken steps toward transfer of the cause. Therefore, since the defendant took no action until after the motion had been duly granted and the jury sworn for trial of the cause in the state court, we do not think that there has been any abuse of discretion which would warrant a reversal on this ground.

The second general ground of appeal is based on the denial of motions for nonsuit and directed verdict, the defendant contending that the testimony showed the presence of contributory negligence on the part of the plaintiff as a matter of law.

There is evidence in the case which shows that the plaintiff, Neidig, turned from the north-bound lanes of the Black Horse Pike into the opening opposite the juncture of the south-bound lanes and Main street. He there stopped his car, and, upon observation, saw a car five hundred to seven hundred feet away coming south on the pike. He then started across

the south-bound lanes into Main street, moved sixty to seventy feet in that direction while in first and second gears, and then observed the defendant's car only ten to fifteen feet away from him. Neidig stated that he could not judge the speed of the other car when it was first seen, but that when it was next seen, close to him, it was traveling at a "terrible" rate of speed.

Defendant argues that the plaintiff was guilty of contributory negligence, as a matter of law, in not continuing to watch the other car while he was crossing the south-bound lanes. We are of the opinion, however, that this failure to constantly observe is not itself controlling, but is only an element to be considered with other testimony in the case. Such was the similar ruling of this court in the case of *Struyk* v. *Griffin*, 107 *N. J. L.* 334. The testimony that the plaintiff, in the instant case, stopped before crossing, observed defendant's car five hundred to seven hundred feet away, and proceeded slowly for a distance of sixty to seventy feet before the collision, accompanied by reasonable inferences which may be drawn therefrom, seems to us to be sufficient to support the trial court's action in allowing the case to go to the jury.

As his third general ground of appeal the defendant alleges error in that part of the charge which dealt with the site of the collision as an intersection. The trial court first read the definition of an intersection as contained in the Motor Vehicle act, and then referred to the further provisions of such act which relate to the operation of vehicles at intersections.

Throughout the trial of the case there were sporadic disputes with reference to the use of the term "intersection," and since the cause arose from the operation of motor vehicles, it would seem that the provisions of the Motor Vehicle act would be pertinent. Furthermore, the trial court left with the jury the determination of whether or not an intersection was involved, and gave proper instructions as to the weight of the statutory rules for motor vehicle operation in determining the question of negligence. That part of the charge in dispute could not be prejudicial to the defendant except as it may have focused the jury's attention on the applicability

of the term "intersection," but the term had already been brought into the case during the presentation of testimony. Under such circumstances we do not consider that this constitutes a sufficient ground for reversal.

For the reasons stated above, the judgment of the court below is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 15.

*For reversal*—None.